Ms. Resnick, can you hear and see us ok? Yes, Your Honor. I can see and hear the Justices. Good, and we can see and hear you well also. And then for Mr. Schuchard, can you see and hear us all right? Yes, Your Honor. I can see and hear you well. Great. All right. So we'll come back to you in about eight minutes because Ms. Resnick has reserved two minutes for rebuttal. So that gets her eight out of the gate and the floor is yours, Ms. Resnick. Thank you. Thank you very much, Your Honor. Your Honor, the sole issue today is whether the petitioner, Razaqlal Ajmeri, is eligible for a form of relief known as 212C. Mr. Ajmeri was born in India, came to the United States as a lawful permanent resident, and has lived here for 38 years. How old was he when he came? He was 15. Go ahead. Yes. In 1995... So he spent virtually his entire life, his entire adult life in the United States. Yes, In USC 3844, he committed bank fraud. He admitted to the crime. He took a plea of guilty and he was convicted. What he's asking for now is relief from deportation, known as removal from the United States to India. Under 8 U.S.C. 1182C, which colloquially known as 212C relief, which was repealed on April 1, 1997, certain individuals convicted of crimes may still get a waiver of forgiveness of those crimes. Although this was repealed on April 1, 1997, the case of INS V. Saint Cyr in 2001 allowed individuals who had entered a plea in these cases before April 1, 1997, the date of the repeal, to be allowed to use this relief. Counselor, can I ask a question? I understand about the repeal that happened on April 1, 1997, but am I mistaken that effective April 24, 1996, there was a repeal of part of that law, and it was in particular the part of the law that allowed the section 212C relief for individuals convicted of certain aggravated felonies? Yes, well, the AEDPA, which was enacted on April 24, 1996, changed the definition of an aggravated felony. Prior to that, aggravated felonies were certain extremely serious crimes for which people had spent five years in jail. The AEDPA, which was effective on April 24, 1996, changed the definition of aggravated felony to include very many other crimes which could have jail sentences of up to one year. That change included adding an aggravated fraud felony with a loss over $10,000. Is that right? That is correct. Our assertion today is that Mr. Ashmeri remains eligible for the relief because he had a plea agreement before April 1, 1997, and that the April 24, 1996 date is not relevant because his conviction was not an aggravated felony. So your argument as to the relevance of the April 1997 date piggybacks on your argument that this wasn't an aggravated felony as defined under the statute? Yes, that is correct. So why wasn't it an aggravated felony since he withdrew more than $10,000? Immediately upon being contacted by the bank, Mr. Ashmeri made restitution of $12,400. So the only amount at issue was $1,053. It's not a function of how much the bank is out, is it? It's a function of how much he stole. But if you look at Nij Hawan and if you look at the definition of an aggravated felony at 43M, the definition of an aggravated felony specifically looks at the loss amount, the loss amount to the victim having to be over $10,000. But Ms. Resnick, this was not an argument that was made below, right? It wasn't made to the IJ or to the BIA, was it? You are correct, Your Honor, but however, if the sole issue is his eligibility for 212C, this calculation of the loss amount and its determination of whether he committed an aggravated felony is part of the question which remains, which is his eligibility for this type of relief. But, I mean, you have to raise arguments both factual and legal to the BIA, don't you? It's our contention that this case should be remanded back to the immigration judge for an evidentiary hearing on whether the loss amount exceeds $10,000. But in your view, it doesn't matter whether you raise the argument below or not, or raise the argument before the BIA or not, you still get to challenge it in the Court of Appeals and go back and get a remand? Your Honor, if the issue is his eligibility for 212C, the issue should not be carried further. Were you his counsel below? No, I was not. And what were the issues below? The issue below was whether he had entered into a plea agreement on or before April 24, 1996, the date on which 212C relief was narrowed by the changed definition of an aggravated felony. Let me ask you, this is a question that, I apologize to my colleagues, this is a district court type question. Has he had any other problems with the law in the 20-plus years since all this occurred? No, Your Honor, he's lived an exemplary life. In fact, the immigration judge below stated that if he was found to be eligible for 212C, that in the exercise of discretion, discretion would be exercised favorably. And the immigration judge indicated that if found eligible, he would have granted this relief. All right. Anything else you wanted to say? I guess a couple of seconds before we click on over to Mr. Schuchard. I would just like to say that it's important to focus on that the issue is his eligibility for this relief, 212C, and to keep our eyes on that issue and to look at it as an issue that's important to keep the petitioner from being deported to India, which is a severe and devastating penalty to himself and to his family. All right. Thank you. You have reserved two minutes for rebuttal. Mr. Schuchard, the floor is yours. Thank you, Your Honor, and good morning. I'm Spencer Schuchard for the United States. May it please the Court. The correct way to dispose of this case is the quickest because petitioner has defaulted review of every dispositive issue here. He never exhausted the issue of his removability before the Court. Let me make sure I understand the chronology here. He lawfully enters in 1988 at the age of 15, right? And he commits one crime in 1996 of which he gets a one-month sentence and he makes substantial restitution. Do I have that right? Yes. And then the government doesn't even move to have him deported until 2014, 18 years later after he was charged. Do I have that right? I don't see any prior removal proceedings for him, no. By the way, what accounts for that extraordinary delay? I don't know that it's extraordinary. You know, there are many, many millions of noncitizens in the United States. Sometimes there are priorities in enforcement and sometimes there aren't, and it's just kind of a vagary of the system. Would it constitute latches if that were available? I don't know that it would, Your Honor, and I wouldn't want to get ahead of the client and opine on that. I don't know that that position has ever been forwarded by the client or anyone else for that matter. And then it takes another 11 years to go through the five years until the immigration judge rules and another five or six years until the BIA rules. What was the reason for those delays? No delay or no reason is given. Proceedings are continued until immigration judges have time on the docket. As a trial judge yourself, I'm sure you understand the constraints of time are the most serious bottleneck in adjudicating anything. You're probably talking to the wrong judge when you talk about time constraints, but anyway, that's either here or there. So I just don't understand why you guys are bothering with this guy. He's been here his entire adult life. He made one mistake, which he promptly pled guilty to, made restitution. And now decades later, you want to get rid of him. Why? Your Honor, removal of non-citizens is permitted under the law. It might be something that I understand. I'm asking an equitable question. I don't have an equitable answer for you. My answer would be to write a letter to Congress. Maybe they can start imposing some limits on these. Well, we know that Congress moves swiftly, of course. Anyway, go ahead. Thank you, Your Honor. So Petitioner never exhausted the issue of his removability. And I'm just going to point out, counsel was talking about the issue of his eligibility. But removability and eligibility for relief are two different things. If he's not removable, he doesn't need relief from anything. So these are distinct problems. What he needed to do in order to preserve the issue of his not being an aggravated felon was to challenge that fact. And instead, he conceded it through different counsel multiple times. He actually conceded the amount of loss to the board. That's on page 7 of the record. So at no point was the agency ever unnoticed that it would have needed to do more than accept his plea. That means that it's settled that he's an aggravated felon, and because of that, he's subject to the criminal alien bar. And that means that he has defaulted jurisdiction over every finding of fact that the agency made relating to his final order of removal. The only finding of the fact that was ever disputed before the immigration judge was the date of his plea agreement. So that is both removability and eligibility for relief that are outside of the court's ability to review. That only leaves colorable legal or constitutional issues. And again, he hasn't exhausted any of those. The only one he seemed to raise was this issue of remand for a sort of a Restrepo hearing, but Restrepo hearings are for aliens who forego the ability to file affirmative 212c applications, and they take their chances at trial in hoping, you know, relying on the idea that they can fall back on the availability of this 212c waiver. But that's not what he did. He took a plea. He never said that he was thinking about filing an affirmative application, and we have to go with the evidence here. And the agency doesn't require reliance in any case. It requires an agreement. It presumes reliance if that agreement predates the cutoff. So there's no actual retroactive application in this case because the agency found that nothing happened before the cutoff date, which is the correct date, which is April 24, 1996. Petitioner's argument that 97 should be the date sort of presumes, as she said, that he's not an aggravated felon, but if he's not an aggravated felon, he doesn't need relief. You can't kind of drag the issues together and hope that you've exhausted one by talking about the other at room work. You know, I can get into some of the other issues, but I'm prepared to sit on the brief unless you have questions. All right. Thank you. We'll now hear from Ms. Resnick for two minutes of rebuttal. We have to also deal with questions of fundamental fairness and due process of law. As your honors have, honorable justices have noted, he has spent over 38 years in the United States. He has since that regrettable criminal incident back 30 years ago. He has led a blameless life. He has a spouse and a child. He has many relatives and friends who wrote affidavits in support. He has family members who have status in the United States. He has a job. He pays taxes. He has shown a very exemplary life except for the crime he committed. The question is, I mean, the fact that he's led an exemplary life since his conviction, I mean, how is that relevant to the issue that's before us on appeal here? The immigration judge did note that if found eligible for 212C relief, that he would have granted it. So it's not a purely theoretical question as to whether he would be eligible for 212 relief. The whole question of whether he would be deported to India hinges on that. And that would be a devastation to him and to his family members. The question of his eligibility for 212 relief does depend upon whether he committed an aggravated felony. And the contention is that he did not commit an aggravated felony and that the April 24, 1996 cutoff date does not apply to him. Yeah, I think there's a hidden issue here, but it's not of any use to you because it wasn't raised below even remotely. This court has never dealt with definitively the issue of latches. To wait after a guy pleads guilty in open court, a matter of plain record, to wait 18 years to even initiate removal proceedings seems to me that there might have been an argument there for latches. If this were a criminal case, of course, or a very civil case, there would be statute of limitations. And the fact that the immigration authorities think that they can ignore time and wait decades before they even initiate proceedings seems to me to raise a fundamental issue. But it's not an issue that you, not through your fault, but through his counsel's fault, was not even remotely raised below. Your Honor, with all due respect, it's unfortunate that many immigration law provisions have no time attached to them. And it's unfortunate that many of our immigration law clients find themselves facing removal from the United States for mishaps or mistakes or crimes that they committed 20, 30, even 40 years ago. It's just a fact of the immigration law. When this came up in the common law, it was dealt with through latches. And the BIA has taken the position that latches does not apply to immigration removal proceedings. And I don't see why that's so, but it's not presented fairly here. Can I ask one question before we lose you? Your brief, when it identifies the issues on appeal, one of the issues it identifies is a violation of due process. And I don't actually see any clearer argument beyond identifying that as an issue as to what the claim to due process violation is here. Can you sort of succinctly tell me in a sentence or two what the due process violation is that you're arguing? There should have been an evidentiary hearing conducted by the immigration judge as to whether there was actually an aggravated felony, as to whether the loss amount exceeded $10,000 and therefore met the definition of an aggravated felony. Even though that wasn't contested below? Yes. The due process requires a hearing regardless of whether or not the petitioner is actually challenging facts. Yes. What's your authority for that? Do you have some case that would support that contention? No, I'm afraid that, Your Honor, that I do not. However, I'm drawing upon the requirements of due process, of law substantive and procedural due process, where the petitioner is facing irreparable harm, the total devastation of his family, deporting him back to India, a country he hasn't been in in 38 years, devastating his life and that of his family. Well, we will reserve decision. Thank you both.